J-A15008-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TARA MOSS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CRAIG EUGENE MOSS | : | |
| | : | |
| Appellant | : | No. 1760 MDA 2025 |

Appeal from the Order Entered December 17, 2025
In the Court of Common Pleas of York County Civil Division at No(s):
2015-FC-000335-12X

BEFORE:   KUNSELMAN, J., LANE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED JULY 07, 2026**

Craig Moss appeals *pro se* from the final protection from abuse (PFA) order dated December 17, 2025, which named Tara Moss and their three minor children as protected persons.  We vacate the final order, reinstate the temporary order entered August 15, 2025, and remand for the PFA court to conduct a final hearing at which both parties may present evidence.  **Craig Moss remains subject to an active PFA order.**

On August 15, 2025, Tara Moss petitioned for and was granted a temporary PFA order, with a final hearing scheduled for August 27, 2025.  We glean from the record that Craig Moss also petitioned for a temporary order, and his petition was also scheduled for the same final hearing.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On August 27, 2025, the parties appeared for the final hearing. Tara Moss testified that Craig Moss harassed her and she was afraid for her safety. She stated, "he's physically hurt me many times." N.T., 8/27/25, at 17. Tara Moss indicated that she wanted Craig Moss to contact her only related to their children through the parenting app AppClose. Before resting Tara Moss' case-in-chief, plaintiff's counsel and the PFA court suggested a proposed agreement, which Craig Moss accepted.

> ATTORNEY HOLT: So you're not agreeable to just entering the AppClose and be done with this?
>
> THE COURT: It would be without admission. No finding of abuse. It wouldn't impair your future custody disputes, which, quite frankly, you guys have got a couple more years to fight about this, foolish though it may appear, and you'll just say, okay, I won't admit I did anything.
>
> ATTORNEY HOLT: And we'll withdraw the ones involving the children. Doesn't get any better than that.
>
> MR. MOSS: My hearing's not the best. I'm a machinist. I don't hear things unless I'm specifically seeing somebody's lips.
>
> THE COURT: Okay. He's saying that there would be an agreement to a no contact Order regarding the children except through AppClose. You want to talk to her about what the kids are doing, you have to do it through AppClose. You don't get to call her. You don't get to stand out front and yell things at her. You don't get to do anything. You can have contact with her through the app only. And you're not moving forward for no contact with the children.

N.T., 8/27/25, at 25–26. The PFA court also accepted the withdrawal of Craig Moss' cross-petition. The hearing ended at 10:00 a.m. on August 27, 2025. *Id.* at 34. The PFA court, Tara Moss, and Craig Moss all signed an agreed final

3-year order that did not include a finding of abuse and that named Tara Moss as a protected person.

At 12:50 p.m. on August 27, 2025, Craig Moss filed a petition to vacate, clarify, or modify the order. He asserted that his consent to the "one-sided order" was invalid because he believed that both petitions were being withdrawn. The PFA court heard the petition on December 17, 2025. At the hearing, Craig Moss insisted that the agreed order be withdrawn. The PFA court indicated that it would find abuse based on Tara Moss' testimony from the prior hearing.

> ATTORNEY HOLT: . . . [I]f the Court were to allow him to withdraw it, I assume the Court would just make a ruling based upon the testimony you heard that day.
>
> THE COURT: Oh, yeah.
>
> ATTORNEY HOLT: Which would probably --
>
> THE COURT: Which would be a finding of abuse.
>
> ATTORNEY HOLT: Right.
>
> THE DEFENDANT: I'm prepared to go for that hearing.
>
> THE COURT: We already had that hearing. That's what he's saying. I'm in a position to make a determination. If you want to withdraw your agreement and Attorney Holt agrees, we've already had the hearing. I'll make a decision based on what we heard. I read the transcript. I refreshed my recollection.
>
> THE DEFENDANT: Want to agree to that?
>
> THE COURT: But now there'll be a finding of abuse.
>
> ATTORNEY HOLT: I don't think you understand the consequences if you agree to that. By us entering into a stipulated Order, that saved you from having a finding of abuse, which saved you from having to go back and having to redo an entire brand new risk of harm assessment in your custody action. Is that what you want?

THE DEFENDANT: Absolutely, because there was nothing inside the complaint that was filed that was provided in testimony that day.

THE COURT: Well, you're, again, confused. The *ex parte* has no relationship to the testimony we took when we had the hearing in August. I will base my decision -- because I haven't read the e*x parte*, I don't care what was said, it expires when the final Order is entered, and I will base my decision on the testimony that was entered. If that's what you want, that's what I'll do.

THE DEFENDANT: I am -- well, at the same time, I didn't get the opportunity to provide any cross, but, I mean, if the end result is if you're going to make a ruling based upon her actual pleading and the actual testimony that was provided, then I'm fine with that.

N.T., 12/17/25, at 9–11. Craig Moss continued to insist that Tara Moss' prior testimony did not support the allegations in her petition, despite the PFA court telling him that would not affect the case. *Id.* at 11 ("[H]er pleading essentially says --"), 12 ("I have not been given a gift. Her pleading --"), 13 ("I read her complaint, and I'm sure you read it too. In that complaint, there was absolutely no reason --").

The PFA court ultimately gave Craig Moss a choice, whether to maintain the agreed order or for the court "to enter an Order based on the testimony we heard." *Id.* at 14. "I don't want to stand by my agreement." *Id.* The PFA court entered a final 3-year order finding that Craig Moss "committed one or more acts of abuse" and including Tara Moss and the parties' three minor children as protected persons.

On December 18, 2025, Craig Moss timely appealed the order. Craig Moss and the PFA court complied with Pennsylvania Rule of Appellate Procedure 1925.

On December 29, 2025, Craig Moss moved to stay the order pending appeal. The PFA court denied the motion as to Tara Moss but granted the motion to remove the minor children as protected persons:

> AND NOW, this 6th day of January, 2026, this court grants in part and denie[s] in part defendant's motion; The Order as it relates to the plaintiff is denied and the defendant shall not have any contact with plaintiff / mother other than relates to the health safety and welfare of the parties' minor children and solely for the purposes of custodial exchanges. All contacts shall occur *ONLY through AppClose.*
>
> Defendant's motion is granted as relating to the children as we believe that Judge Margetas made a determination after an extensive hearing that the children would no longer be protected parties. Accordingly, defendant may resume contact with his children and the mother for the sole purposes of reinitiating custody exchanges, *ONLY through AppClose*.

*See* Order, 1/6/26, at 1.

Craig Moss presents eight issues on appeal, which we reorder as follows.

I. Did the trial court abuse its discretion and violate Appellant's due process rights by basing its finding of abuse on unpled allegations of physical violence raised for the first time at the hearing, directly contravening the notice requirements upheld in Snyder v. Snyder?

II. Did the trial court abuse its discretion and violate Appellant's due process rights by permitting Appellant to withdraw from a consent agreement and immediately entering a final PFA order without conducting a full evidentiary hearing, thereby denying Appellant the right to cross-examine Appellee or present a defense?

III. Did the trial court abuse its discretion, commit an error of law, and violate Appellant's constitutional due process rights by granting a three-year PFA order that included the minor children, explicitly using the PFA statute to bypass the strict requirements of the Child Custody Act?

- 5 -

IV. Was the trial court barred by the doctrine of collateral estoppel from finding Appellant posed a threat of harm to the minor children, given that a coordinate judge definitively adjudicated that exact issue mere weeks prior?

V. Did the trial court abuse its discretion and commit an error of law by entering a final PFA order without making specific findings of fact or articulating the legal basis for its conclusion, thereby precluding meaningful appellate review?

VI. Did the trial court err or abuse its discretion by entering and refusing to vacate the final PFA Order where the proceeding was initiated and sustained upon material misrepresentations by Appellee, constituting a fraud upon the court?

VII.  Did the trial court abuse its discretion and deny Appellant a full and fair hearing by misapplying the rules of evidence to exclude self-authenticating records of Appellee's criminal convictions and documented history of violent abuse against Appellant?

VIII. Did the trial court abuse its discretion and prejudice Appellant by excluding certified custody trial transcripts and highly probative communications, and by improperly conditioning the preservation of the appellate record upon the consent of opposing counsel?

*See* Craig Moss' Brief at 2–3 (reordered for ease of disposition).

Before reaching the merits, "we note with extreme displeasure" that counsel for Tara Moss did not file an appellee's brief as required by rule. ***Commonwealth v. Muhammad***, 337 A.3d 541, 542 (Pa. Super. 2025) (citing ***Commonwealth v. Pappas***, 845 A.2d 829, 835 (Pa. Super. 2004), and Pa.R.A.P. 2112).

## I. Reliance on allegations not included in Tara Moss' petition

In his first issue, Craig Moss faults the PFA court for crediting Tara Moss' allegations of physical abuse that she did not include in her PFA petition. He argues this violated due process and deprived him of the notice required to

prepare a defense. Craig Moss contends that his situation is distinguishable from that in ***Snyder v. Snyder***, 629 A.2d 977 (Pa. Super. 1993), because in ***Snyder***, the defendant had actual notice of the other acts of abuse alleged and he admitted to them.

At a hearing on a PFA petition, "the plaintiff must prove the allegation of abuse by a preponderance of the evidence." 23 Pa.C.S. § 6107(a). Based on the statutory purpose, a "court's authority to conduct a hearing . . . is not limited by the allegations contained in the petition." ***Weir v. Weir***, 631 A.2d 650, 654 (Pa. Super. 1993). Rather, "a person filing a protection from abuse petition will not be rigorously limited to the specific allegation of abuse found in the Petition." ***Raker v. Raker***, 847 A.2d 720, 726 (ultimately citing ***Snyder***, 629 A.2d at 981). The majority opinion in ***Snyder*** did not limit this holding to cases where a defendant had notice and admitted to committing the other abusive actions. ***Cf. Snyder***, 629 A.2d at 986–87 (Wieand, J., concurring). We follow ***Snyder*** and afford Craig Moss no relief on this issue.

## II. Lack of a full evidentiary hearing

In his second issue, Craig Moss argues that the PFA court abused its discretion by depriving him of his due process right to cross-examine Tara Moss and to present evidence in his defense. We are constrained to agree.

To recap, the August 27 hearing ended during Tara Moss' testimony, before her attorney rested and without cross-examination or evidence from Craig Moss. Craig Moss consented to a final PFA order without admission. A short time later, he moved to vacate the order because his consent was not

valid. At the December 17 proceeding, the PFA court allowed Craig Moss to withdraw his consent. Plaintiff's counsel asked if the PFA court would "just make a ruling based upon the testimony" from the August 27 hearing. "Oh, yeah," said the PFA court, "[w]hich would be a finding of abuse." Despite the PFA court's admonition that it would find that Craig Moss committed abuse based on Tara Moss' prior testimony, Craig Moss insisted that the testimony did not establish the allegations from the petition and the *ex parte* hearing. When the PFA court said it would not consider the *ex parte* hearing, Craig Moss said he was "fine with" the court ruling based on the petition and the testimony. The PFA court later cited Craig Moss' statement as an agreement to the procedure used:

> THE COURT: . . . The *ex parte* has no relationship to the testimony we took when we had the hearing in August. I will base my decision -- because I haven't read the *ex parte*, I don't care what was said, it expires when the final Order is entered, and I will base my decision on the testimony that was entered. If that's what you want, that's what I'll do.
>
> THE DEFENDANT: I am -- well, at the same time, I didn't get the opportunity to provide any cross, but, I mean, if the end result is if you're going to make a ruling based upon her actual pleading and the actual testimony that was provided, then **I'm fine with that.**

N.T., 12/17/25, at 10–11 (emphasized portion cited by PFA court).

Craig Moss argues on appeal that this statement was "akin to a demurrer," in which he was asserting that the PFA petition did not state a cognizable claim of abuse. From review of the transcript, we are constrained to agree that Craig Moss' statement was a misguided, inarticulate attempt to

challenge the differences between Tara Moss' petition and her testimony. For the next three transcript pages, Craig Moss kept talking about Tara Moss' petition. The PFA court kept telling him that did not matter. In that context, Craig Moss' above statement was part of his argument about how Tara Moss' petition was not proven. It was not a knowing waiver of his right to present evidence.

We commend the patience of the PFA court in repeatedly explaining that the basis for its final order would be the evidence from the final hearing rather than the allegations from Tara Moss' petition. As explained in the previous issue, this is permissible based on *Snyder*. We note that the PFA court characterized Craig Moss as "bright, articulate, [and] capable of self-educating to the point that he obviously understands complex legal issues" while also being "cunning in his ability to be smart yet appear oblique at the same time." PFA Court Opinion, 2/4/26, at 2. However, we conclude that Craig Moss' statement above did not prove that he knowingly relinquished his right to cross-examine Tara Moss or present other evidence on his own behalf. With no more searching inquiry, the PFA court could not rely on this statement as a valid waiver of Craig Moss' right to present any defense whatsoever.

We therefore vacate the final order entered December 17, 2025, and reinstate the temporary order pending a final hearing at which Tara Moss can conclude her case-in-chief and Craig Moss can present evidence. *See Leshko v. Leshko*, 833 A.2d 790, 792 (Pa. Super. 2003). We address the remaining issues to the extent they affect the case on remand.

### III.    Remaining issues

Craig Moss' next three issues challenge the inclusion of the children as protected persons and the PFA court's failure to enter factual findings. These issues are moot based on reinstatement of the temporary order, which does not list the children as protected persons.

Craig Moss' final three issues challenge the PFA court's treatment of certain documents that he claims demonstrate Tara Moss' fraud on the court, perpetration of physical violence, and lack of fear of bodily injury. On remand, the PFA court has discretion to consider these items if they are relevant to its determination of whether Tara Moss meets her burden of proof.

Final order dated December 17, 2025, vacated. Temporary order dated August 15, 2025, reinstated. Case remanded with instructions. **Craig Moss remains subject to an active PFA order.** Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 07/07/2026